# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:19-cv-280-RJC
### (3:14-cr-254-RJC-DSC-1)

| | |
|---|---|
| CARLTON CALVIN WILSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on *pro se* Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), Petitioner's Motion to Amend, (Doc. No. 3), Petitioner's Motion for Leave to File, (Doc. No. 4), the Government's Motion to File a Corrected Response, (Doc. No. 6), and Petitioner's Motion to File a Corrected Reply, (Doc. No. 9).

## I. BACKGROUND

Petitioner was indicted for six counts of knowingly and unlawfully possessing a firearm after having been previously convicted of three or more violent felonies in violation of 18 U.S.C. §§ 922(g)(1). (3:14-cr-254, Doc. No. 15). Petitioner pled guilty to three of the § 922(g) counts in exchange for the Government's dismissal of the remaining three counts. He signed a written Plea Agreement in which he admitted to being guilty as charged of Counts Two, Four, and Five and acknowledged: his minimum and maximum sentencing exposure; that the sentence had not yet been determined and an advisory guideline sentence would be calculated; that the sentence, up to the statutory maximum, would be determined at the Court's sole discretion; and that Petitioner

1

would not be able to withdraw the plea as a result of the sentence imposed. (Id., Doc. No. 21 at 1-2). The Plea Agreement specifically states that, if Petitioner is found to have three prior convictions for a violent felony or felony drug offense, the minimum term of imprisonment is 15 years and the maximum is life pursuant to 18 U.S.C. § 924(e)(1). (Id., Doc. No. 21 at 2). The parties agreed that either party may seek a departure and variance and that the United States would inform the Court and probation office of all facts pertinent to sentencing. (Id., Doc. No. 21 at 2). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty including the right to a jury trial with the assistance of counsel, the right to confront and cross-examine witnesses, and the right not to be compelled to incriminate himself. (Id., Doc. No. 21 at 4). Petitioner expressly agreed to waive his appellate and post-conviction rights except for claims of ineffective assistance of counsel and prosecutorial misconduct. (Id., Doc. No. 21 at 4-5).

A Rule 11 hearing was held before the Magistrate Judge on March 31, 2015. (Id., Doc. No. 49). Petitioner agreed to proceed before the Magistrate Judge and stated under oath that his mind was clear and that he understood he was there to enter a guilty plea that could not be later withdrawn. (Id., Doc. No. 49 at 3-4). Petitioner stated that he and counsel had reviewed the Indictment and Plea Agreement together. (Id., Doc. No. 49 at 4, 23). The Magistrate Judge read aloud the charges and explained the elements of the offense and advised Petitioner of his potential sentencing exposure. (Id., Doc. No. 49 at 4-6). Petitioner stated that he understood the charges against him, including the maximum and minimum penalties and the elements of the offense. (Id., Doc. No. 49 at 7). Petitioner agreed that counsel had discussed the sentencing guidelines with him and that he understood the Court could impose any sentence within the statutory limits that may be lower or higher than the guidelines range. (Id., Doc. No. 49 at 8). The Court specifically informed Petitioner that, if he was found to be an armed career criminal, his minimum sentence

2

would be 15 years' imprisonment and the maximum would be life and Petitioner stated he understood. (Id., Doc. No. 49 at 6-7); see also (Doc. No. 49 at 12) (prosecutor stating at the Rule 11 hearing that it is likely that, based on Petitioner's record, he qualifies as an armed career criminal). He stated that he understood that the plea would be binding even if the sentence were more severe than he expected. (Id.). Petitioner confirmed that by pleading guilty, he was waiving the right to plead not guilty, the right to have a speedy trial before a jury with the assistance of counsel, the right to summon witnesses to testify on his behalf, the right to confront witnesses against him, and the right to receive the presumption of innocence. (Id., Doc. No. 49 at 9-10). Petitioner agreed that he is, in fact, guilty of the counts to which he was pleading guilty and committed the acts alleged in the Indictment. (Id., Doc. No. 49 at 10). Petitioner stated that his plea was freely and voluntarily entered with a full understanding of what he was doing, that he was not promised anything other than the promises contained in the plea agreement, and that he was not threatened in any way to enter the plea against his wishes. (Id., Doc. No. 49 at 21-22). Petitioner acknowledged that he knowingly and willingly waived accept the plea agreement's limitation on the right to appeal and file post-conviction proceedings. (Id., Doc. No. 49 at 16). Petitioner confirmed that he had had ample time to discuss possible defenses with counsel and was entirely satisfied with counsel's services. (Id., Doc. No. 49 at 22).

In support of Petitioner's guilty plea, the parties submitted a written factual basis that sets forth the following information with regards to Petitioner:

> 1. On September 29, 2014, (Count One) after several phone calls with the cooperating defendant ("CD"), Wilson sold the CD a Taurus, model PT945, .45 caliber pistol for $300. During the deal, Wilson removed the magazine from the pistol and wiped down the firearm with his shirt. Wilson then used some kind of cleaning product to further wipe down the gun and loaded a round that was chambered back into the magazine. Wilson then cleaned the magazine and told the CD not to touch the bullets because you never know when you have to do something

3

and leave those things behind.

2. On October 3, 2014. (Count 2) Wilson sold the CD a Beretta. 9um pistol and a Taurus .38 Special revolver for $670. After the deal the CD and Wilson discussed future firearm sales. The Taurus is stolen and was loaded with five rounds of ammunition.

3. On October 7, 2014, (Count Three) Wilson sold a Rossi revolver to the CD for $270 ($250 for gun/$20 for Wilson). The revolver was loaded with five rounds of ammunition. The CD advanced Wilson $550 for two guns they discussed. Wilson then left the store.

4. On October 7, 2014, (Count Four) Wilson sold three firearms to the CD - a Glock model 22, .40 caliber pistol; a Taurus model R971, .157 caliber revolver; and a Smith & Wesson, model 67, .38 caliber revolver. The Glock was fully loaded with a 30 round magazine. The Taurus and the Smith & Wesson each had six rounds. The Glock and Taurus were sold together for $925. The Smith & Wesson was purchased for $300. The Smith & Wesson revolver was reported stolen from Lincoln County on February 8, 1980, and the Taurus .357 caliber revolver was reported stolen from Stanley, NC on July 28, 2014.

5. On October 17, 2014. (Count Five) Wilson sold three firearms to the CD – a Uberti, Aldo .44 caliber revolver, Ithaca. 37 Featherlight, 12 gauge shotgun, a Beretta. model S686EL, 20 gauge shotgun, and a Gamo Air Rifle for $800. (The air rifle is not considered a firearm.) The Uberti, Aldo revolver was stolen on September 15, 2014 from Garland County, Arkansas. The Ithaca and Beretta were stolen from Waxhaw, NC on October 16, 2014. On January 15, 2015, law enforcement agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") interviewed Brendan Cornelius Penn. Penn told the agents that on October 16, 2014. Wilson picked Penn up in a red truck. Wilson and Penn then met McDonald in Hidden Valley. McDonald and another individual got into McDonald's vehicle – a dark colored Jeep Compass. At the time, Wilson was wearing an ankle monitor so he would not take part in the break in, but Wilson did show them a house in Waxhaw. Wilson asked Penn, McDonald, and the other individual to wait an hour so that Wilson could get out of the area. Penn stated that McDonald put on a construction vest and knocked on the door. When no one answered the door, McDonald kicked it in. Penn stated that he, McDonald, and the other individual stole a small safe/lockbox found in the home and a larger safe found on the first floor. There was a very large safe that would not fit in McDonald's Jeep. McDonald called Wilson about this safe, and Penn, McDonald, and the other individual agreed to meet with Wilson to pick up his red truck. Penn, McDonald, and the other individual then returned to the house and loaded the largest safe into the red truck. Later, the men opened the largest safe and found several rifles, including the Remington and the Browning rifles that were sold by McDonald and Penn to the CD the next day. Also located in the safe were an Ithaca

4

12 gauge shotgun and a Berretta 20 gauge shotgun that were sold to the CD by Wilson on October 17, 2014.

6. On November 4, 2014. (Count Six) Wilson sold the CD a Taurus, model PT24/7 Pro C .40 caliber pistol loaded with 9 rounds of ammunition. There was a second magazine with l5 rounds of .40 caliber ammunition. The items were purchased for $500.

7. Wilson has been convicted of a crime punishable by imprisonment for a term exceeding one year.

8. All of the firearms possessed by Wilson traveled in or affected interstate commerce.

(Id., Doc. No. 22 at 1-2).

The Presentence Investigation Report ("PSR") scored the base offense level as 22 because Petitioner was responsible for possessing a loaded firearm and he was previously convicted of a crime of violence (case number 08CRS249729), the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine, and Petitioner committed any part of the instant offense after one felony conviction of a crime of violence or a controlled substance offense per U.S. Sentencing Guidelines § 2K2.1. (Id., Doc. No. 33 at ¶ 24). Four levels were added because Petitioner is responsible for selling 11 firearms pursuant to § 2K2.1(b)(1)(B). (Id., Doc. No. 33 at ¶ 25). Two more levels were added because Petitioner is responsible for six stolen firearms. (Id., Doc. No. 33 at ¶ 26). Four levels were added pursuant to § 2K2.1(b)(6)(B) because Petitioner used or possessed any firearm or ammunition in connection with another felony offense or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. (Id., Doc. No. 33 at ¶ 27). There was no cross reference pursuant to § 2K2.1(c)(1)(A) because it would result in lower adjusted offense level. (Id., Doc. No. 33 at ¶ 28). The adjusted offense level

5

subtotal was 32. (Id., Doc. No. 33 at ¶ 32). However Petitioner is an armed career criminal because he has at least three prior convictions for a violent felony or serious drug offense, or both, committed on different occasions, *i.e.*, North Carolina convictions for breaking and entering in case numbers 07CRS201777, 07CRS208584, 08CRS53547, 08CRS53598, and 08CRS253352, so the offense level is 34. (Id., Doc. No. 33 at ¶ 33). Three levels were deducted for acceptance of responsibility resulting in a total offense level of 31. (Id., Doc. No. 33 at ¶¶ 34-36). Petitioner had 24 criminal history points and a criminal history category of VI, and armed career criminals also have a criminal history category of VI. (Id., Doc. No. 33 at ¶¶ 60-62).

Counsel filed Objections to the PSR including the four-level enhancement under § 2K2.1(b)(6)(B). (Id., Doc. No. 31). At the sentencing hearing, counsel preserved Petitioner's ACCA objection that his North Carolina burglary convictions should not be considered violent felonies under Johnson v. United States, 135 S.Ct. 2551 (2015), even though counsel explained to Petitioner that burglary is an enumerated offense and does not run afoul of ACCA's residual clause. (Id., Doc. No. 50 at 7). The Government moved for a downward departure. See (Id.). The Court overruled Petitioner's objections, granted the Government's motion, and sentenced Petitioner below the guidelines range to 156 months' imprisonment for each count, concurrent, followed by three years of supervised release. (Id., Doc. No. 39).

Petitioner's attorney filed an Anders[1] brief on direct appeal, stating that there are no meritorious issues for appeal but questioning whether the plea was voluntarily entered

---

[1] Anders v. California, 386 U.S. 738 (1967).

6

and whether the Court erred in designating Petitioner an armed career criminal. Petitioner filed a *pro se* supplemental brief raising those issues and also challenging the constitutionality of the Armed Career Criminal Act ("ACCA"). The Fourth Circuit dismissed Petitioner's appeal of his sentence due to his knowing and voluntary waiver and affirmed as to the remainder of the Judgment. United States v. Wilson, 734 Fed. Appx. 182 (4th Cir. 2018).

In the instant § 2255 Motion to Vacate, Petitioner argues that (renumbered): (1) Petitioner does not qualify for ACCA sentencing and his sentence exceeds the statutory maximum; and (2) counsel was ineffective for (A) failing to adequately represent Petitioner with regards to sentencing, (B) misadvising Petitioner that he would be able to appeal notwithstanding his plea waiver, and (C) failing to inform Petitioner that he could have pled guilty without a plea agreement. With regards to procedural default, Petitioner explains that counsel filed an Anders brief on direct appeal and Petitioner lacked access to a law library because he was in segregation. (Doc. No. 1 at 9).

In his Motion to Amend, Petitioner clarifies that his two breaking and entering convictions in case numbers 07CRS01776 and 07CRS208584 are not violent felonies because the court did not make any written findings about aggravating factors and therefore Petitioner's sentencing exposure was not for more than 12 months; the convictions in 08CRS53547 and 08CRS53598-1 are not violent felonies because they are for non-generic burglary of a building or structure; and , Petitioner's convictions were for possession of stolen goods and not burglary. The conviction in case number 08CRS253352 was for conspiracy to rob, not breaking and entering. He further argues that the enhancement under § 2K2.1(b)(6)(B) does not apply because the firearms were locked inside a safe and were

7

not "present." (Doc. No. 3 at 5). With regards to ineffective assistance of counsel, Petitioner argues that counsel misadvised him to plead guilty to three counts because he could not be sentenced under ACCA pursuant to <u>Johnson</u>, and for telling him his only options were to plead guilty or go to trial and face the maximum sentence. Had Petitioner known that he could "plead guilty in open court" like his co-defendant he would have done so. (Doc. No. 3 at 5-6). Counsel also misled Petitioner that he could "appeal and fight" if Petitioner received an "adverse" or ACCA sentence, and that the record was going to preserve the question of whether breaking and entering is an ACCA predicate. Counsel was also ineffective for failing file an appeal for Petitioner after Petitioner asked him to do so, and Petitioner later found out about this when he made an inquiry to the Court. If counsel had made a specific objection to the ACCA enhancement based on a prior conviction under North Carolina General Statutes § 14-54, Petitioner's statutory maximum would have been 10 years' imprisonment. Petitioner requests the appointment of counsel, noting that his prison goes on lockdown on a regular basis which makes him unable to access the law library and legal materials.

In his supporting memorandum, Petitioner challenges his ACCA sentence and additionally argues that he is actually innocent of the § 922(g) offenses because counsel and the Court misadvised him that knowledge of his status as a felon is not an element of the offense, that the Court failed to properly notify Petitioner of all the elements of the crime, and the Court failed to ensure there was an adequate factual basis for the offense. Petitioner claims that he told his lawyer that he did not know he was violating federal law.

The Government argues in its Corrected Response, (Doc. No. 7), that Petitioner previously challenged his ACCA sentence on direct appeal, he has not shown deficient

performance and prejudice, the challenge to the conviction is procedurally barred, and all of the claims are without merit.

In his Reply, (Doc. No. 8), Petitioner argues that the Indictment alleged only that Petitioner knowingly possessed a firearm and ammunition, not that he knew his status as a felon. The Court advised him consistent with the Indictment during the Rule 11 hearing and the Government did not proffer evidence that Petitioner knew he was a felon at the time. Petitioner was sentenced under ACCA which raised his sentence from a 10-year maximum to a 15-year minimum mandatory. Petitioner challenged the ACCA enhancement at sentencing and on appeal but binding circuit precedent foreclosed his arguments, however, the Supreme Court subsequently decided Rehaif v. United States, 139 S.Ct. 2191 (2019) which holds that there is a knowledge element in § 922(g)(1) and 924(a)(2). Reconsideration based on Rehaif is warranted. Petitioner reiterates his sentencing calculation and ineffective assistance of counsel claims.

In his Corrected Reply, (Doc. No. 9), Petitioner argues *inter alia* that Rehaif invalidated his guilty plea and that procedural default does not bar relief because the Rehaif error is a jurisdictional defect and because it is a novel legal claim.

## II.  SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine

9

motions to vacate, along with "any attached exhibits and the record of prior proceedings. . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

### (1) Involuntary Plea Claim

First, Petitioner contends that his guilty plea was not knowingly and voluntarily entered.

"[A] guilty plea constitutes a waiver of all non-jurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). A court must also ensure that the plea is supported by an independent factual basis and is not the

result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3).

Here, the Court complied with Rule 11 by confirming that Petitioner understood the charges, his sentencing exposure including the possibility of ACCA sentencing, and the rights he was relinquishing by pleading guilty. Petitioner stated that he understood and specifically agreed to waive his appellate and collateral rights except for claims of prosecutorial misconduct and ineffective assistance of counsel. The plea was supported by a written Factual Basis that Petitioner read and understood. He pled guilty without any promises, threats, or coercion. Petitioner further stated that he was satisfied with his lawyer's services. Petitioner's present self-serving allegations that his plea was not knowingly and voluntarily entered are conclusively refuted by the record, including his own sworn statements, and are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005). Petitioner's freely and voluntarily entered guilty plea thus waived all non-jurisdictional defects.

**(2)     Sentencing Claims**

Petitioner contends that his prior convictions are not ACCA predicates so his sentence exceeds the statutory maximum and that the enhancement pursuant to § 2K2.1(b)(6)(B) does not apply to his case.

It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Dyess,

11

730 F.3d 354, 360 (4th Cir. 2013) (quoting <u>United States v. Linder</u>, 552 F.3d 391, 396 (4th Cir. 2009)); <u>see also United States v. Roane</u>, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir.1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

Petitioner argued on direct appeal that ACCA is unconstitutional and that he does not qualify for ACCA sentencing. The Fourth Circuit already held on direct appeal that Petitioner waived his ability to raise the ACCA sentencing challenge in his knowing and voluntary plea waiver. This Court will not relitigate the matter. <u>See</u>, <u>e.g.</u>, <u>Hitt v. United States</u>, 2017 WL 424888 at *3 (W.D.N.C. Jan. 30, 2017) (§ 2255 petitioner cannot relitigate a claim that was dismissed as barred on direct appeal).

Further, Petitioner's ACCA argument is meritless. The PSR states that Petitioner qualifies as an armed career criminal pursuant to North Carolina breaking and entering convictions in case numbers 07CRS201777, 07CRS08584, 08CRS53547, 08CRS53598, and 08CRS253352. The Government has submitted Petitioner's felony Judgment and Commitment forms in cases 08CRS053547, 08CRS053598, and 08CRS253352. Petitioner was convicted in each of these cases of violating North Carolina General Statutes § 14-54(a). (Doc. No. 7-1 at 1-8). He was sentenced in a consolidated Judgment in case numbers 08CRS053547 and 08CRS053598 to 12-15 months' imprisonment, and in case number 08CRS253352 to 37-54 months' imprisonment. (<u>Id.</u>). The Fourth Circuit has held that convictions under § 14-54(a) are violent felonies under ACCA. <u>United States v. Mungro</u>, 754 F.3d 267, 272 (4th Cir. 2014). Although the convictions in case numbers 08CRS053547

12

and 08CRS053598 are included in a consolidated judgment, the offenses are counted separately because they occurred on different occasions. See (3:14-cr-254, Doc. No. 33 at ¶¶ 54, 55) (case number 08CRS053547 is a breaking and entering of Fort Dobbs Hardware on July 27, 2006 where currency and property valued at $1,900 was taken; 08CRS053598 is a breaking and entering of drug stores on July 27, 2006 during which prescription pill bottles and currency were taken); see, e.g., United States v. Linney, 819 F.3d 747 (4th Cir. 2016) (burglaries of two residences that were only 30 feet apart on the same date occurred on different occasions for purposes of § 924(e)(1) because, *inter alia*, they were at two distinct street addresses and the homeowners were separately victimized by the two burglaries); United States v. Carr, 592 F.3d 636 (4th Cir. 2010) (13 break-ins of storage units located at a single address occurred on different occasions for purposes of ACCA because, although they shared the same nature and criminal objective, they occurred at different locations, had different victims, and the space between each storage unit gave the defendant an opportunity to decide whether to engage in the subsequent break-in). Petitioner therefore qualifies for ACCA sentencing and this claim fails on the merits. Thus, Petitioner's claim that his sentence exceeds the statutory maximum because he does not qualify as an armed career criminal likewise fails.

Petitioner's claim that he does not qualify for the § 2K2.1(b)(6)(B) enhancement is waived, non-cognizable, and meritless. This is a claim of a guideline calculation error that was waived by Petitioner's knowing and voluntary guilty plea and is a non-constitutional claim that is not cognizable on collateral review. Moreover, the § 2K2.1(b)(6)(B) enhancement is irrelevant because Petitioner was properly sentenced as an armed career criminal, and therefore, even if there was a calculation error it had no impact on Petitioner's

13

sentence.

**(3)** <u>**Section 922(g) Convictions**</u>

Petitioner contends that he is actually innocent of violating § 922(g) because the Indictment does not allege, the Government failed to proffer any evidence, and the Rule 11 hearing omits to mention, that Petitioner knew his status as a convicted felon pursuant to <u>Rehaif v. United States</u>, 139 S.Ct. 2191 (2019). The Government argues that this claim is procedurally defaulted from collateral review and Petitioner has not shown cause and prejudice or actual innocence to avoid the procedural default, and that this claim lacks merit.

A person who "knowingly violates" certain subsections of § 922, including § 922(g), "shall be" subject to penalties of up to 10 years' imprisonment. 18 U.S.C. § 924(a)(2). The text of § 922(g) in turn provides that it "shall be unlawful for any person ..., being an alien ... illegally or unlawfully in the United States," to "possess in or affecting commerce, any firearm or ammunition." The United States Supreme Court recently held in <u>Rehaif</u> that, in a prosecution under §§ 922(g) and 924(a)(2), the Government must prove "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm" 139 S.Ct. at 2200.

In a direct appeal case, <u>United States v. Lockhart</u>, 947 F.3d 187, 196–97 (4th Cir. 2020), the Fourth Circuit recently found that the district court committed plain error in accepting the defendant's guilty plea to a § 922(g) offense without informing him of his ACCA sentencing exposure and based on the pre-<u>Rehaif</u> understanding of the law because, *in the aggregate*, the ACCA and <u>Rehaif</u> errors were sufficient to undermine the court's confidence in the outcome of the proceeding. The Fourth Circuit did not, however, decide

14

whether a stand-alone <u>Rehaif</u> error requires automatic vacatur of a defendant's plea, or whether such error should be reviewed for prejudice.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998) (internal citations omitted); <u>United States v. Sanders</u>, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982); <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492–93 (4th Cir. 1999); <u>United States v. Maybeck</u>, 23 F.3d 888, 891-92 (4th Cir. 1994). Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. <u>See</u> <u>Satcher v. Pruett</u>, 126 F.3d 561, 572 (4th Cir. 1997) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986)). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. <u>See</u> <u>Murray</u>, 477 U.S. at 488; <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Cause for procedural default exists where "a constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel," *i.e.*, (1) when a Supreme Court decision explicitly overrules one of its precedents, (2) when a Supreme Court decision overturns a longstanding and widespread practice to which the Supreme Court has not spoken but which a near-unanimous body of lower court authority has expressly approved, and (3) when a decision disapproves a practice the Supreme Court has

15

arguably sanctioned in prior cases. <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984). When a case in one of the first two categories is given retroactive application, there is almost certainly no reasonable basis upon which an attorney previously could have urged the position that the Supreme Court ultimately adopted. <u>Id.</u> at 17.

Under the limited "actual innocence" exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ [of habeas corpus] even in the absence of a showing of cause for the procedural default." <u>Murray</u>, 477 U.S. at 496. "In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims … on the merits notwithstanding the existence of a procedural bar to relief." <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 393 (2013). This fundamental miscarriage of justice exception is grounded on the "equitable discretion" of habeas courts to see that "federal constitutional errors do not result in the incarceration of innocent persons." <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993). To make such a showing, a petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995).

Petitioner did not raise his <u>Rehaif</u> claim on direct appeal. He argues that his claim is novel and that he is actually innocent of violating § 922(g) in an effort to avoid the procedural default of this claim. First, Petitioner's claim of novelty does not demonstrate cause. It is not enough that "a claim was unacceptable to that particular court at that particular time." <u>Engle v. Isaac</u>, 456 U.S. 107, 130 (1982). The issue decided in <u>Rehaif</u> "was percolating in the courts for years…." United States v. Bryant, 2020 WL 353424 (E.D.N.Y. Jan. 21, 2020) (citing <u>United States v. Reap</u>, 391 Fed. Appx. 99, 103-04 (2d Cir.

16

2010) (in challenging the validity of a plea, rejecting while affording plenary treatment to a defendant's claim that he did not know his 922(g) felon status, including his assertion that "Supreme Court jurisprudence in analogous cases" required proof of such knowledge); United States v. Kind, 194 F.3d 900, 907 (8th Cir. 1999) (rejecting defendant's argument that "district court erred in not instructing the jury that a defendant must know his status as a convicted felon to violate § 922(g)(1)"); see also Rehaif, 139 S.Ct. at 2199 (observing that, even "[p]rior to 1986 … there was no definitive judicial consensus that knowledge of status was not needed").

Even if the Rehaif claim is considered novel, however, Petitioner cannot establish prejudice or actual innocence because there was sufficient evidence in the record to establish that he knew his status as a felon. The PSR's criminal history section sets forth multiple felony convictions for which Petitioner served 12 months or more in prison: 16 to 20 months (06CRS202132, 06CRS202133, 06CRS202134, 06CRS202135); 12 to 15 months (08CRS53547-1, 08CRS53547-2); and 37 to 54 months (08CRS249729 and 08CRS253352) (3:14-cr-254, Doc. No. 33 at ¶¶ 48, 54, 57). Petitioner admitted that he was charged with "having been previously convicted of at least one crime punishable by imprisonment for a term exceeding one year, [and] did knowingly and unlawfully possess firearms… in and affecting commerce" in violation of 18 U.S.C. §§ 922(g)(1) and admitted his guilt of that offense. (3:14-cr-254, Doc. No. 15); (Id., Doc. No. 21). His factual guilt is supported by the PSR and Petitioner has not come forward with any evidence to undermine the Court's confidence that he is factually guilty of that offense.

While the defendant in Rehaif reasonably could have been confused about his immigration status, Petitioner could make no such argument about the status of his prior

felony convictions for which he served several years in prison. See Bryant, 2020 WL 353424 at *4 (no showing of prejudice or miscarriage of justice where defendant pled guilty to violating § 922(g) prior to Rehaif and there was sufficient evidence in the record to establish knowledge of his status, "namely, the fact that he was sentenced on his state felony conviction to five years' incarceration and actually served more than three years of that term" pursuant to the PSR); Floyd v. United States, 2020 WL 374695 (N.D. Ill. Jan. 23, 2020) (it was "inconceivable" that petitioner was unaware at the time he possessed the firearm that he was a felon because he was sentenced to four years in prison and admitted at the Rule 11 hearing that he was a convicted felon).

Therefore, Petitioner's Rehaif claim is procedurally defaulted from § 2255 review, no exception applies, and this claim is therefore dismissed.

**(4)     Ineffective Assistance of Counsel**

Petitioner contends that counsel was ineffective for inducing him to plead guilty, inadequately representing him with regards to sentencing, and failing to file an appeal after Petitioner requested that he do so.

First, Petitioner contends that ineffective assistance of counsel rendered his guilty plea involuntary because counsel failed to inform him that he could plead guilty without a plea agreement and its attendant appellate waiver, misadvised him that knowledge of felon status is not an element of § 922(g) contrary to Rehaif, misadvised him that he would not be sentenced as an armed career criminal, and erroneously informed him that he could appeal the sentence.

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134

18

(2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. See, e.g., Lafler, 566 U.S. at 156 (in the context of a rejected or lapsed plea offer, the defendant must show a reasonable probability that he would have accepted the plea, that the government would not have withdrawn it, that the court would have accepted its terms, and that the conviction and/or sentence under the plea offer would have been less severe than under the judgment and sentence that were actually imposed); Hill, 474 U.S. at 59 (in the context of an involuntary plea, the defendant has to demonstrate "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

Petitioner contends that counsel was ineffective for failing to inform him that he could plead guilty "straight up" to the Indictment which would have preserved his right to appeal the sentence. Petitioner claims that he would have pled guilty without a plea agreement had he known that he could retain his appellate rights by doing so. (Doc. No. 3 at 6). This claim fails because Petitioner has not demonstrated a reasonable probability that counsel's allegedly deficient performance changed the outcome of the proceedings.

19

Petitioner pled guilty to three counts of violating § 922(g) in exchange for the Government's dismissal of three additional § 922(g) counts. Petitioner cannot demonstrate that a straight-up plea would have resulted in a less severe judgment or sentence. Six § 922(g) counts are more serious than the three and Petitioner has not demonstrated that a straight-up plea had a reasonable probability of resulting in a lower sentence ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Petitioner thus has not demonstrated a reasonable probability that Petitioner would have entered a straight-up plea or that he would have received a less severe judgment or sentence, but for counsel's alleged misadvice.

With regards to the Rehaif claim, Petitioner's contention that counsel misadvised him about the elements of the § 922(g) offense does not warrant relief. Assuming *arguendo* that counsel misadvised Petitioner about the elements of a § 922(g) offense, Petitioner has failed to demonstrate prejudice. Petitioner would have to show a reasonable probability that, had he known of § 922(g)'s knowledge requirement about his status as a felon, he would not have pled guilty to the § 922(g) offenses. This premise is implausible. Petitioner admitted in pleading guilty that he was previously convicted of a crime punishable by imprisonment for a term exceeding one year. (3:14-cr-254, Doc. No. 22 at 2). The PSR reveals that he was previously convicted of felonies on multiple occasions and that he spent several years in prison for those offenses. (Id., Doc. No. 33). His present self-serving contention that he would not have entered into an extremely favorable plea agreement had he known about his prior felony convictions, is rejected. See, e.g., Floyd, 2020 WL 374695 (petitioner did not argue, nor could he argue, that he did not know that he had been

convicted of a felony when he possessed the firearms because the plea agreement stated that he was previously convicted of a crime for which he was sentenced to four years in prison and he admitted in his plea hearing that he had been convicted of at least one crime punishable by imprisonment for a term exceeding one year).

Petitioner's contention that counsel induced his guilty plea by advising him that, under Johnson v. United States, 135 S.Ct. 2551 (2015), he would not be sentenced as an armed career criminal is conclusively refuted by the record. Petitioner acknowledged his understanding in the written Plea Agreement and at the Rule 11 hearing that he could be sentenced as an armed career criminal to a minimum mandatory of 15 years' imprisonment up to life. (3:14-cr-254, Doc. No. 49 at 6); (Id., Doc. No. 21 at 2). Any misapprehension that Petitioner might have had about his sentencing exposure was thus cured and his plea was entered with knowledge of his ACCA sentencing exposure. United States v. Akinsade, 686 F.3d 248, 253 (4th Cir. 2012) (a defendant is unable to show prejudice if counsel's misadvice is corrected by the court at a Rule 11 proceeding). His present self-serving contention to the contrary is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Petitioner's contention that counsel misadvised him that he could appeal his sentence despite his plea waiver is likewise conclusively refuted by the record. Petitioner acknowledged in the written Plea Agreement and in the Rule 11 hearing that he was specifically waiving his right to appeal his sentence except for claims except for ineffective assistance of counsel and prosecutorial misconduct. (Id., Doc. No. 21 at 5); (Id., Doc. No. 49 at 14). Petitioner's contention that counsel misadvised him that he could appeal his sentence despite the waiver is thus conclusively refuted by the record and will be rejected.

See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22. The Fourth Circuit found on direct appeal that Petitioner's plea waiver was knowingly and voluntarily entered and enforced the waiver of his sentencing claims on direct appeal. See United States v. Wilson, 734 Fed. Appx. 182 (4th Cir. 2018) (finding that Petitioner knowingly and voluntarily waived his right to appeal).

Second, Petitioner contends that counsel inadequately represented him with regards to sentencing. The Court has already concluded that no sentencing error occurred. See Section (2), *supra*. Therefore, Petitioner has failed to demonstrate either deficient performance or prejudice. See generally Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

Third, Petitioner contends that counsel failed to file an appeal after Petitioner requested that he do so. The record reflects that no notice of appeal was filed by counsel. However, Petitioner's *pro se* Letter to the Fourth Circuit inquiring about the status of his appeal was docketed as a *pro se* Notice of Appeal. Counsel was subsequently appointed to assist Petitioner and the appeal was not time-barred. Accordingly, assuming that Petitioner asked counsel to appeal and that counsel failed to do so, Petitioner was not deprived of a direct appeal. Therefore, this claim will be denied.

## IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied and the other pending Motions are granted.

**IT IS, THEREFORE, ORDERED** that:

1.      Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28

22

U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2.      Petitioner's Motion to Amend, (Doc. No. 3), Motion for Leave to File, (Doc. No. 4), and Motion to File a Corrected Reply, (Doc. No. 9), are **GRANTED**.

3.      The Government's Motion to File a Corrected Response, (Doc. No. 6), is **GRANTED**.

4.      **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: February 21, 2020

Robert J. Conrad, Jr.
United States District Judge

23